UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID AFFER,

      Plaintiff,                       Case No. 12-12422

v.

                                      Hon. John Corbett O'Meara

VAN DYKE DODGE, INC.,

      Defendant,

_____/

## OPINION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Before the court is Defendant's motion for summary judgment, filed April 15, 2013. Plaintiff filed a response on April 26, 2013; Defendant submitted a reply brief on May 10, 2013. The court heard oral argument on June 13, 2013. For the reasons explained below, Defendant's motion is denied.

## BACKGROUND FACTS

On June 5, 2012, Plaintiff David Affer filed this action against his former employer, Defendant Van Dyke Dodge. Plaintiff was employed with Van Dyke from February 2009 until his termination in July 2010. Van Dyke is an auto dealer and an auto repair shop based in Warren, Michigan. Plaintiff alleges that his termination was in violation of the FMLA.

Plaintiff was employed as a collision repair technician and reported to Tim Knaffla.  Plaintiff contends that he suffered from depression and informed Knaffla of this fact in May 2010.  On the morning of June 28, 2010, Affer called Knaffla, stated that he was "really sick" and had a lot of personal issues to take care of, and asked him for time off.  See Plaintiff's Ex. 1 at 16.  Knaffla testified that he did not approve Affer's request because he could not "let you have a week off . . . on a minute notice." Id. at 17.  He told Affer that he would see him in the shop the next morning.  Id. See also Def.'s Ex. 1 at 16, 19.

Affer testified, however, that Knaffla told him to "get yourself straight . . . get your head together and . . . just keep me informed . . . what your plans are." Plaintiff's Ex. 3 at 111.  Affer thought Knaffla was "okay" with Affer taking a "few days off."  Id. at 112.  See also Pl.'s Ex. 4 at 65.

During his time off, Affer remained at home, drinking heavily.  When Affer did not report to work for three days, from June 29, 2010 to July 1, 2010, one of his co-workers called to tell Affer that he was considered a "no-call/no-show" and was going to be fired.  See Pl.'s Ex. 3 at 99.  After that phone call, Affer tried to call Knaffla but could not reach him; he left a message with his secretary.  Id. at 100.

Later that day, Affer's girlfriend, Amy Michajlyszyn, became worried about

-2-

his drinking and contacted his doctor, who believed that Affer "was trying to harm himself because of his drinking." Pl.'s Ex. 4 at 40. Affer's doctor contacted the police, who assisted in taking Affer to the hospital. Affer was admitted on July 1 with a clinical impression of "depression for several days" and "alcohol abuse." Pl.'s Ex. 5. He was transferred to the Behavioral Center of Michigan on July 2 for rehabilitation and was discharged on July 9. See Pl.'s Ex. 6. In addition, Affer underwent outpatient therapy until July 14, 2010.

During his hospital stay, Michajlyszyn phoned Knaffla a couple of times. "I called and let him know that David was worried about his job and that I was I afraid it was affecting him – his progress in getting better, that he was stressed about it. And [Knaffla] told me not to worry about it, just have David come up there when he was released from the hospital." Pl.'s Ex. 4 at 66-67. Knaffla acknowledged that Michajlyszyn called him to let him know that Affer was in the hospital and to express concern about Affer's job. Def.'s Ex. 1 at 38, 40. Knaffla told her: "I said, when David gets better, I wanted him in front of me." Id.

When Affer returned to work on July 15, Knaffla told him that he was fired as of July 1, 2010, because he had failed to call or show up for work for three days. Pl.'s Ex. 3 at 116. Knaffla testified that he did not terminate Affer on July 1 because he did not want to "upset him" or make him "sicker." Pl.'s Ex. 1 at 20.

"So, I didn't say yes or no, he's terminated [at that time].  Because I believed if I would have just terminated him on the spot, I would have issues."[1]

## LAW AND ANALYSIS

### I.    Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The party opposing summary judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

### II.   FMLA Interference Claim

Plaintiff claims that Defendant interfered with his right to take FMLA leave. The FMLA provides eligible employees up to twelve weeks of unpaid leave each

---

[1] This testimony was taken at an administrative unemployment hearing.  Defendant objects to its consideration on summary judgment.  However, to the extent this testimony is inconsistent with Knaffla's deposition or testimony at trial, it is not hearsay and is admissible.  See Fed. R. Civ. P. 801(d)(1).

year if the employee has a serious health condition that prevents him from performing the functions of his position. 29 U.S.C. § 2612. A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves; (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Further, the FMLA prohibits employers from interfering with employees' exercise of their rights under the FMLA. 29 U.S.C. § 2615 (a) (1).

To bring a successful interference claim under the FMLA, 29 U.S.C. § 2615 (A), a plaintiff must show: (1) he is an "eligible employee;" (2) the defendant is an "employer" as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled. Calvin v. Honda of Am. Mfg. Inc, 346 F.3d 713 (6th Cir. 2003). "To invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave. The critical question is whether the information imparted to the employer is sufficient to reasonably apprise it of the employee's request to take time off for a serious health condition." Walton v. Ford Motor Co., 424 F.3d 481, 486 (6th Cir. 2005) (citations omitted).

The FMLA does not entitle an employee to "any right, benefit, or position of

employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B).  As a result, "[a]n employee lawfully may be dismissed, preventing him from exercising his statutory rights to FMLA leave or reinstatement, but only if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave." Arban v. West Pub. Corp., 345 F.3d 390, 401 (6th Cir. 2003).

Defendant concedes that the Plaintiff was an eligible employee and that Defendant was an employer as defined by FMLA.  However, Defendant argues that Plaintiff neither suffered from a serious health condition nor provided adequate notice of his intent to take leave.   Further, Defendant contends that Plaintiff was terminated for failing to call or show up for work for three days, not as a result of his leave.

For the time period between June 28 and the morning of July 1, 2010, it is clear that Plaintiff did not provide adequate notice to his employer of a serious health condition.  Even if Plaintiff told Knaffla that he was "really sick," such a general statement is insufficient notice that Plaintiff needed leave for a qualifying reason.  See, e.g., Walton, 424 F.3d at 487-88.  Further, it is undisputed that Plaintiff was not receiving inpatient care or continuing treatment from a health care

provider during that time.  Thus, Plaintiff was not entitled to FMLA leave from June 28 to July 1, 2010.  Defendant was, therefore, entitled to terminate Plaintiff under its three-day "no call/no show" policy, assuming Plaintiff failed to call or show up for work for three days.

Viewing the evidence in the light most favorable to Plaintiff, however, there is a genuine issue of material fact regarding whether Plaintiff was in fact a "no call/no show" from June 28 to July 1 and whether he was terminated for that reason.  According to Plaintiff, during their conversation on June 28, Knaffla permitted him to take some time off.  Plaintiff also testified that he left a message with Knaffla's secretary on July 1.  In addition, Michajlyszyn testified that she called Knaffla on July 1 to inform him that Affer was going to the hospital. Pl.'s Ex. 4 at 61-62. Plaintiff argues that he was not terminated as of July 1, but only after he returned from his inpatient and outpatient treatment on July 15.  Defendant has not argued that Plaintiff was not suffering from a serious health condition while he was hospitalized or that it did not receive notice of Plaintiff's hospitalization.  Therefore, summary judgment in favor of Defendant is not appropriate on Plaintiff's FMLA claim.

## <u>ORDER</u>

IT IS HEREBY ORDERED that Defendant's motion for summary judgment

is DENIED.

s/John Corbett O'Meara
United States District Judge

Date:  October 2, 2013

I hereby certify that a copy of the foregoing document was served upon counsel of record on this date, October 2, 2013, using the ECF system.

s/William Barkholz
Case Manager